IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | EP-21-CR-00663-FM-ATB |
| | § | |
| (1) MARCELINO CARDENAS- | § | |
| CASTANEDA, | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

On this day, the Court considered the "Government's Motion to Forcibly Medicate Defendant to Restore Competency and Request for Commitment under 18 U.S.C. § 4241(d)(2)(A)" ("Motion"), filed by the United States of America ("Government") on April 27, 2022. (ECF No. 35).[1] The matter was referred to this Court by United States District Judge Frank Montalvo.

For the reasons set forth below, the Court **RECOMMENDS** that the Government's Motion be **DENIED**.

**I.   BACKGROUND**

Defendant Marcelino Cardenas-Castaneda ("Defendant") was arrested on March 27, 2021, and later indicted on April 21, 2021, on one count of attempted illegal reentry pursuant to 8 U.S.C. § 1326(a) & (b)(1). (ECF No. 15).

On March 31, 2021, Defendant, through his attorney Elyse Bataller-Schneider, filed a "Motion for Mental Examination of Defendant" due to the belief that Defendant "may be so

---

[1] At the Status Conference held on May 2, 2022, the Court granted the Government's Motion as to its request for a hearing on the issue of involuntary medication and denied the Government's Motion as to its request for further commitment under 18 U.S.C. § 4241(d)(2)(A). (ECF No. 39). Therefore, the instant report and recommendation considers the Government's Motion as to its request to forcibly medicate Defendant to restore competency.

1

mentally incompetent as to be unable to understand the proceedings against him or to properly assist in his own defense." (ECF No. 8). Thereafter, the Court granted Defendant's Motion and entered an Order for Mental Examination. (ECF No. 9).

On April 13, 2021, the Court received the psychiatric report from Dr. Cynthia D. Rivera for the purpose of competency determination, which opined that Defendant was not competent to stand trial. (ECF No. 11). Thereafter, the Court ordered Defendant to be committed pursuant to 18 U.S.C. § 4241(d) to the custody of the Attorney General for treatment in a suitable facility for a reasonable period of time, not to exceed four months, to determine whether there is a substantial probability that in the foreseeable future that Defendant would attain the capacity to permit the trial to proceed. (ECF No. 14).

After receiving the report from the facility at which Defendant is hospitalized pursuant to 18 U.S.C. § 4241(d) on February 17, 2022 (ECF No. 25),[2] the Court committed Defendant on February 18, 2022, to be examined for a reasonable period, but not to exceed forty-five days, at the same facility to determine under 18 U.S.C. § 4246 whether (1) Defendant is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage or the property of another, and whether (2) suitable arrangements for State custody and care of the person are not available. (ECF No. 26).[3]

After receiving the report from the facility pursuant to 18 U.S.C. § 4246 (ECF No. 27), the Court held a competency hearing on April 26, 2022, and determined that Defendant was not competent to stand trial. (ECF No. 36).

---

[2] The report indicates that an internal administrative hearing was held on December 16, 2021, to determine if Defendant met the criteria for the involuntary administration of anti-psychotic medication for reasons such as grave disability or dangerousness. The administrative hearing officer found that Defendant did not meet the criteria for involuntary administration of anti-psychotic medication in a *correctional* environment at that time. (ECF No. 25, p. 10).

[3] The Court notes it previously ordered such commitment in its original Order of Commitment on April 13, 2021. *See* (ECF No. 14, p. 1).

Thereafter, on April 27, 2022, the Government filed its "Government's Motion to Forcibly Medicate Defendant to Restore Competency and Request for Commitment under 18 U.S.C. § 4241(d)(2)(A)." (ECF No. 35). Defendant filed his "Defendant's Response to the Government's Motion to Forcibly Medicate" ("Response") on May 5, 2022. (ECF No. 41). On May 11, 2022, the Government filed its "Government's Reply to Defendant's Response to Government's Motion to Forcibly Medicate Defendant to Restore Competency" ("Reply"). (ECF No. 45). The Government further filed a Proposed Treatment plan on May 26, 2022. (ECF No. 47).

Pursuant to *Sell v. United States*, 539 U.S. 166 (2003), this Court held a hearing via video Zoom call ("Hearing") on June 3, 2022. After hearing the evidence, this Court made its finding that the Government did not prove by clear and convincing evidence that an important governmental interest was present, and therefore, this Court would recommend to the District Court to deny the Government's Motion. At the hearing, the Court alerted the parties that a written report and recommendation was forthcoming.

## II.  ANALYSIS

The Supreme Court in *Washington v. Harper* recognized that individuals "posses[] a significant liberty interest in avoiding the unwanted administration of antipsychotic drugs under the Due Process Clause of the Fourteenth Amendment. 494 U.S. 210, 221-22 (1990). Thereafter, the Supreme Court in *Sell v. United States* held that "involuntary medication of a defendant solely to render the defendant competent to stand trial for a serious, but nonviolent, crime is permissible in rare circumstances." *United States v. Palmer*, 507 F.3d 300, 303 (5th Cir. 2007) (citing *Sell*, 539 U.S. at 179). Namely, involuntary medication is permissible "only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness

of the trial, and taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell*, 539 U.S. at 179.

The Supreme Court outlined four factors for lower courts to consider: (1) whether "*important* governmental interests are at stake;" (2) whether "involuntary medication will *significantly further* those . . . interests;" (3) whether "involuntary medication is *necessary* to further those interests;" and (4) whether the "administration of the drugs is *medically appropriate, i.e.,* in the patient's best medical interest in light of his medical condition." *Id.* at 180-81 (emphasis in original). The Government bears the burden of proof and must provide clear and convincing evidence of each of the above factors. *United States v. James*, 938 F.3d 719, 720-21 (5th Cir. 2019).

      a.    **Whether an Important Governmental Interest in Prosecuting Serious Crime is Present**

In *Sell*, the Supreme Court held, in relevant part, that:

> [t]he Government's interest in bringing to trial an individual accused of a *serious crime* is important. That is so whether the offense is a *serious crime* against the person or a *serious crime* against property. In both instances, the Government seeks to protect through application of the criminal law the basic human need for security.

*Sell*, 539 U.S. at 180 (emphasis added). However, the Supreme Court also held that lower courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution." *Id.*

The Fifth Circuit has noted that "courts [have] held that crimes authorizing punishments of over six months are 'serious.'" *United States v. Mann*, 532 F. App'x. 481, 494 (5th Cir. 2013) (quoting *Palmer*, 507 F.3d at 304); *see also United States v. Sanchez-Cruz*, No. EP-07-CR-144-DB, 2007 WL 4190692 (W.D. Tex. Nov. 19, 2007) (noting cases that use the definition of serious offense from the Supreme Court's Sixth Amendment precedents "as any offense for which a

4

defendant may be sentenced to more than six months imprisonment" to guide their *Sell* analysis of "serious" crimes).

The Government argues that it has an important interest in prosecuting Defendant since he is "charged with violating 8 U.S.C. § 1326(a) & (b)(1) . . . [which] carries a maximum penalty of ten years of incarceration." (ECF No. 35, p. 6). While Defendant argues in their brief and at the Hearing that the Sentencing Guidelines outline a much lower sentence than the maximum sentence, the Fifth Circuit has held that "it is appropriate to consider the maximum penalty, rather than the sentencing guidelines range, in determining 'seriousness' in involuntary medication proceedings." *United States v. Palmer*, 507 F.3d at 304; *see also United States v. Gutierrez*, 704 F.3d 442, 451 (5th Cir. 2013) ("[The Fifth Circuit] follow[s] the approach of several other circuits in comparing the time already served by [a defendant] with the statutory maximum authorized for his indicted offenses.").

The Court notes that Defendant here is facing a maximum sentence of ten years imprisonment. *See* 8 U.S.C. §§ 1326(a) and (b)(1). However, the maximum sentence a defendant is facing is not dispositive as to the issue of whether Defendant is charged with a "serious crime." Otherwise, any offense with a maximum sentence of over six months would be deemed a "serious" offense warranting involuntary medication. *See, e.g.*, *United States v. Evans*, 293 F. Supp. 2d 668, 674 (W.D. Va. 2003) (finding that a misdemeanor with a maximum sentence of a term of imprisonment of up to one year to be a "serious offense" when only considering the maximum sentence). Instead, the Fifth Circuit has analyzed the maximum sentence in combination with whether the underlying offense was a crime against person or property. *See Palmer*, 507 F.3d at 304 (finding a defendant was charged with a serious offense when "he faces a maximum sentence

5

of ten years *and* his behavior created a substantial risk of harm to himself and others") (emphasis added).

As to the underlying behavior in the instant case, the Court notes that illegal reentry under 8 U.S.C. § 1326 is not a crime against persons or property. *See* 8 U.S.C. § 1326. Further, previous courts within the Fifth Circuit have held that illegal reentry under § 1326 is not a "serious crime" for the purposes of involuntary medication since "[t]he charge of illegal reentry addresses neither crimes against the person nor crimes against property." *See United States v. Barajas-Torres*, No. 3:03-CR-2011-KC, 2004 WL 1598914, at *3 (W.D. Tex. July 1, 2004) ("While repeat illegal reentry offenders may certainly tax the justice system by adding cases to the criminal docket, such would not constitute a sufficiently important interest on a national scale to justify involuntary medication."). Accordingly, the Court finds that the alleged offense of illegal reentry is not a "serious crime" that gives rise to an important governmental interest as to necessitate involuntary medication.

### b. Whether Special Circumstances Lessen the Government's Interest

Furthermore, the Supreme Court in *Sell* outlined two special circumstances that "may lessen the importance of [the Government's] interest." *Sell*, 539 U.S. at 180. First, the potential for "lengthy confinement in an institution" due to the defendant's failure to take drugs voluntarily "would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." *Id.* Second, the fact "that the defendant has already been confined for a significant amount of time []for which he would receive credit toward any sentence ultimately imposed" would similarly lessen the Government's interest. *Id.* The Court finds both special circumstances present in the instant case.

6

First, as to the potential for "lengthy confinement in an institution" due to the defendant's failure to take drugs voluntarily, the Court notes that a report from the facility at which Defendant resides states that Defendant "appears to meet the criteria for civil commitment under Title 18, U.S. Code, Section 4246." (ECF No. 27, p. 16).  Therefore, the Court finds that Defendant faces a potentially longer commitment should he continue to refuse to take medication voluntarily, which "would diminish the risks that ordinarily attach to freeing without punishment one who has committed a serious crime." *See Sell*, 539 U.S. at 180.

Second, as to whether Defendant "has already been confined for a significant amount of time []for which he would receive credit toward any sentence ultimately imposed," the Court notes that Defendant has already been confined for over fourteen months.  Furthermore, at the hearing, Dr. Ashley Christiansen and Dr. Robert Sarrazin testified that it would take roughly six to eight months from the onset of treatment to restore Defendant to competency, and potentially up to twelve months to restore Defendant to competency.  The Court considers this time, in addition to (1) the over fourteen months Defendant has already been confined, (2) the time to transport Defendant back to El Paso (in light that it took five months to transport Defendant from El Paso to the facility), and (3) the time to adjudicate Defendant's case.  The Court notes that the total combined time that Defendant could be confined is upwards of three or four years before the case is adjudicated.  If found guilty and sentenced, Defendant would have already served a significant portion of the potential ten-year maximum sentence.  Therefore, the Court finds that Defendant has been confined for a significant amount of time for which he would receive credit toward any sentence ultimately imposed.

Accordingly, the Court finds that special circumstances are present in the instant case that lessen the Government's interest in prosecution.

### c.     Government's Proposed Additional Considerations

In its Reply and during the Hearing, the Government raised two other considerations to support their position that there are important governmental interests at stake here. First, the Government argues that "Defendant's criminal and immigration history can also be a factor . . . [i]n evaluating the nature of the crime." (ECF No. 45, p. 3) (citing *United States v. Jaramillo-Ayala*, 526 F. Supp. 2d 1094 (S.D. Cal. 2007)). The Court first notes that it cannot find, and the parties have not provided, any Supreme Court or Fifth Circuit precedent that have considered a defendant's criminal and immigration history in evaluating the nature of the underlying charged offense. In fact, the Court notes that the Supreme Court in *Sell* set out the important governmental interest simply as "[t]he Government's interest in bringing to trial an individual accused of a serious crime." *Sell*, 539 U.S. at 180. The Supreme Court held that the Government has an important interest to "protect through the application of the criminal law the basic human need for security" by prosecuting "serious crime[s] against the person [and] against property." *Id.* Furthermore, the Court here notes that the additional special circumstances outlined by the Supreme Court in *Sell* are circumstances that *lessen* the Government's interest, not increase the Government's interest. *Id.* The Supreme Court held that lower courts "must consider the facts of the individual case in evaluating the Government's interest in prosecution," but also cautioned that the standard set out in *Sell* "will permit involuntary administration of drugs solely for trial competence purposes in certain instances . . . [b]ut those instances may be rare." *Id.* Therefore, considering the Supreme Court's recognition in *Harper* that a defendant has a "significant" constitutionally protected "liberty interest" in avoiding forced medication and the Supreme Court's caution in *Sell* that forced medication should apply only in "limited circumstances," the Court here

declines to expand the considerations for what constitutes important governmental interests beyond those considerations outlined previously by the Supreme Court or the Fifth Circuit.

Second, the Government argues that "preventing recidivism is another factor that supports the Government's interest in taking a case to trial." (ECF No. 45, p. 3) (citing *United States v. Nicklas*, 623 F.3d 1175, 1179 (8th Cir. 2010)). The Court here finds that the Eighth Circuit's decision in *Nicklas* is distinguishable from the instant case. In *Nicklas*, the Eighth Circuit considered "the intertwined nature of [the defendant's] mental disease and his crimes," and therefore found that "the government . . . has a substantial interest in seeking a sentence of supervised release in this case" in order to continue to supervise the defendant's mental disease to prevent recidivism. However, the circumstances of the instant case are distinguishable. Defendant here is a citizen of Mexico who will most likely be removed to Mexico once the instant case is resolved. *See* (ECF No. 41, p. 7). Therefore, the Court fails to see how the Government would supervise a Mexican citizen once he is removed to Mexico or how the Government could prevent recidivism of illegal reentry once an individual has been removed. *See Sell*, 539 U.S. at 180 ("Courts, however, must consider the facts of the individual case in evaluating the Government's interest in prosecution."). Furthermore, the Court cannot find, and the parties have not provided, any Fifth Circuit precedent holding that preventing recidivism is an important governmental interest as to necessitate involuntary medication. Additionally, as discussed above, the Court declines to expand the considerations for what constitutes important governmental interests beyond those considerations outlined by the Supreme Court or the Fifth Circuit.

Accordingly, the Court fails to find that the Government's two proposed additional considerations are relevant to the strength of the governmental interest in prosecuting "serious crimes."

### d. Conclusion

In sum, considering the underlying alleged conduct of Defendant's charged offense, combined with the special circumstances outlined in *Sell* that lessen the importance of the governmental interest in prosecution, the Court finds that the Government has failed to satisfy by clear and convincing evidence that there is an important governmental interest present in the instant case.

## III. CONCLUSION

On the evidence before the Court, in light of (1) the offense charged not being a crime against person or property, (2) the time Defendant has already been confined, and (3) the potential for further confinement under 18 U.S.C. § 4246, the Court finds that the Government has failed to satisfy by clear and convincing evidence that there is an important governmental interest at stake here.

Therefore, since a court must find that important governmental interests are at stake to permit involuntary administration of drugs solely for trial competency purposes, the Court finds that further findings on the other three *Sell* factors need not be considered.[4]

---

[4] *See Sell*, 539 U.S. at 180 ("First a court *must find* that *important* governmental interests are at stake) (first emphasis added) (second emphasis in original); *see also Barajas-Torres*, 2004 WL 1598914, at *3 n.6 (W.D. Tex. July 1, 2004) (holding that "defendant's best interests, if treatment would in fact serve his best interests, are considered if and only if an important interest is identified justifying involuntary medication.").

Accordingly, the Court **RECOMMENDS** that "Government's Motion to Forcibly Medicate Defendant to Restore Competency and Request for Commitment under 18 U.S.C. § 4241(d)(2)(A)" be **DENIED.**

**SIGNED** and **ENTERED** this 8th day of June, 2022.

_____
**ANNE T. BERTON
UNITED STATES MAGISTRATE JUDGE**

**NOTICE**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**